IN THE SUPREME COURT OF THE STATE OF DELAWARE

TARYN TURNER,[1] § 
　 § No. 155, 2022
　Respondent Below, §
　Appellant, §
　 § Court Below–Family Court
　v. § of the State of Delaware
　 §
DEPARTMENT OF SERVICES § 
FOR CHILDREN, YOUTH AND § File No. 21-04-02TN
THEIR FAMILIES (DSCYF), §　　　　CN19-05539
　 § Petition No. 21-07192
　Petitioner Below, §　　　　19-30611
　Appellee. §

Submitted: September 15, 2022
Decided: November 17, 2022

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), her attorney's motion to withdraw, the appellee's response, the Child Attorney's response, and the record on appeal, it appears to the Court that:

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

(1)     By order dated April 8, 2022, the Family Court terminated the parental rights of the appellant, Taryn Turner (the "Mother"), in her minor daughter (the "Child").[2]  The Mother appeals.

(2)     On appeal, the Mother's counsel has filed an opening brief and motion to withdraw under Rule 26.1(c).  Counsel asserts that he has conducted a conscientious review of the record and the relevant law and has determined that the Mother's appeal is wholly without merit.  Counsel informed the Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider.  The Mother provided a statement for the Court's consideration, which counsel incorporated into his Rule 26.1(c) brief.  The appellee, the Department of Services for Children, Youth and Their Families (DSCYF), and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3)     In October 2019, when the Child was one year old, DSCYF filed an emergency petition for custody of the Child after the Mother attempted suicide and was admitted to MeadowWood Behavioral Health Hospital.  With the filing of

---

[2] The Family Court's order also terminated the parental rights of the Child's father, who is not a party to this appeal.  We refer only to facts in the record that relate to the Mother's appeal.

DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[3] At the preliminary protection and adjudicatory hearings, the Mother, who was unemployed and living in a motel, stipulated that the Child was dependent in her care based on lack of suitable housing. The Family Court found that the Mother had consented to the Child remaining in DSCYF custody, that it was in the Child's best interest to remain in DSCYF custody, and that DSCYF was making reasonable efforts to reunify the family.

(4) In January 2020, the Family Court held a dispositional hearing to review the case plan that DSCYF had developed to facilitate the Mother's reunification with the Child. Prior to the hearing, the Mother's visits with the Child had been suspended after the Mother's family interventionist witnessed the Mother yelling at and hitting her paramour. After the incident, the Mother repeatedly called and texted the interventionist using aggressive and vulgar language. The Mother also acted aggressively at a subsequent team meeting. As a result of these incidents and the Mother's history of physical assault, the Mother's case plan included a domestic-violence component. Given the Mother's admission that she had been diagnosed with bipolar disorder and anger issues, the case plan compelled the Mother to seek mental-health treatment. The case plan also required the Mother to

---

[3] When a child is removed from home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Pro. Rs. 212-219.

obtain a substance-abuse evaluation, secure stable housing, complete a parenting class, and see a physician to assess her physical ability to care for the Child in light of the Mother's scoliosis diagnosis.

(5) The first review hearing was considered on DSCYF's motion in light of the COVID-pandemic-related courthouse restrictions. At the time, the Mother had been unable to make any progress on her case plan because she was incarcerated. The Family Court found that it remained in the Child's best interests to remain in DSCYF's care and custody and that DSCYF was making reasonable efforts to reunify the family.

(6) As of the August 28, 2020 review hearing, the Mother failed to appear. The DSCYF treatment worker reported difficulty contacting the Mother because the Mother had blocked the worker's number on her phone. Efforts to secure housing for the Mother had been hampered because the Mother had not provided DSCYF with proof of employment, which was needed to complete the application for the State Rental Assistance Program. The Mother had not yet completed a substance-abuse evaluation and was refusing to participate in domestic-violence programming. The Mother had been, however, engaged with parenting classes and had been attending visits with the Child. The Family Court found that the Mother's compliance with her case plan had not been satisfactory, that it was in the Child's

best interest to remain in DSCYF's care and custody, and that DSCYF was making reasonable efforts to reunify the family.

(7) As of the December 2, 2020 permanency hearing, the Mother was employed and enjoyed appropriate visits with the Child. The Mother had not, however, provided proof of her employment to DSCYF, had not obtained stable housing, had not received mental-health treatment, had failed to appear for a substance-abuse evaluation, had not completed a parenting class, and had not engaged in domestic-violence programming. The Family Court found that the Mother was in partial compliance with her case plan, commending her for obtaining employment and working diligently to maintain it. The Family Court found, however, that the Mother needed to focus on other aspects of her case plan by engaging in the Batterers' Intervention Program, completing a substance-abuse evaluation, and addressing her mental-health issues.

(8) As of a post-permanency hearing on April 19, 2021, the Mother had not yet secured stable housing, still needed to engage in the Batterers' Intervention Program, had not engaged in mental-health treatment, and had not submitted to a substance-abuse evaluation. In light of the Mother's paramour's history with DSCYF, DSCYF asked the paramour, with whom the Mother was living, to enroll in a parenting class.

5

(9) On May 3, 2021—more than eighteen months after the Child entered DSCYF's custody—the Family Court granted DSCYF's motion to change the permanency goal from reunification to the concurrent goals of reunification and termination of parental rights/adoption. In August 2021, the Family Court held a second post-permanency hearing. Although the Mother continued to be employed, she had not enrolled in the Batterers' Intervention Program, had not obtained housing security, and had not obtained a substance-abuse evaluation. Moreover, the Mother had only visited with the Child on four occasions since the April post-permanency 2021 hearing.

(10) On March 11, 2022, the Family Court held a hearing on DSCYF's termination-of-parental-rights petition. The Family Court heard testimony from the Mother's current family interventionist, the Mother's treatment worker, the Child's foster mom, the Child's permanency worker, the Mother's paramour, and the Mother. The evidence presented fairly established that the Mother had completed anger-management and parenting classes. The Mother had not, however, completed any other elements of her case plan. In fact, the Mother had consistently refused to seek treatment for her mental-health and substance-abuse issues. Although several appointments with different providers were made for her during the more than two years that her treatment case was active with DSCYF, the Mother did not attend any of them. Moreover, the Mother had not yet enrolled in the Batterers' Intervention

6

Program, and the Mother had an outstanding warrant for her arrest in January 2021 for terroristic threatening. Since the August post-permanency hearing, the Mother had missed seven of the fourteen scheduled visits with the Child. Finally, the Family Court heard that the Child was doing well in the care of her foster mother, who is an adoptive resource.

(11) On April 8, 2022, the Family Court issued a written order terminating the parental rights of the Mother in the Child. The Family Court first found that DSCYF had proved by clear and convincing evidence that the Mother had failed to plan and was unable to sufficiently plan for the Child's needs or mental and emotional health and development under 13 *Del. C.* § 1103(a)(5). The Family Court found that, because the Child was placed in DSCYF custody due to reports of the Mother's suicidal ideation and in light of the Mother's mental health diagnoses, it was critically important that the Mother receive mental-health treatment. She had not done so in the two years her case was active with DSCYF and, in fact, had missed an appointment at MeadowWood as recently as two weeks before the TPR hearing. Moreover, despite the Mother's 2017 criminal convictions involving physical assault and her former interventionist's credible testimony that the Mother had physically attacked her former paramour in 2019, the Mother had not yet begun, much less completed, the Batterers' Intervention Program. Although the Mother testified that she was scheduled for a mental-health evaluation and to begin the

Batterers' Intervention Program in the coming weeks, the Family Court found that the Mother's delay in engaging in treatment, coupled with the Mother's past failure to attend scheduled appointments, left the court with little confidence that the Mother would, in fact, follow through with these appointments.

(12) When the statutory basis for termination is failure to plan, there must be proof of at least one additional statutory factor.[4] Here, the Family Court found proof that the Child had been in DSCYF care for a period in excess of one year.[5] Turning to the best-interests factors under 13 *Del. C.* § 722, the Family Court found that six factors favored termination (the Child's interactions with her parents and other significant people in her life; the Child's adjustment to her home, school, and community; the parties' mental and physical health; the Mother's past and present compliance with her parental responsibilities to the Child; the Mother's history of domestic violence; and the Mother's criminal history), found that one factor weighed against termination (the Mother's wishes), and gave no weight to one factor (the Child's wishes). After conducting its best-interests analysis, the court found by clear and convincing evidence that termination of the Mother's parental rights was in the Child's best interests. This appeal followed.

---

[4] *Id.* § 1103(a)(5)(a)(1)-(5) (listing additional conditions).
[5] *Id.* § 1103(a)(5)(a)(1).

(13) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[6] We review legal rulings *de novo*.[7] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[8] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[9] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[10]

(14) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[11] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[12] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition[13] and proof that DSCYF made *bona fide* reasonable efforts to preserve the family unit.[14] If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of

---

[6] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

[7] *Id.* at 440.

[8] *Id.*

[9] *Id.*

[10] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[12] *Id.* at 537.

[13] 13 *Del. C.* § 1103(a)(5)(a)(1)-(5) (listing additional conditions).

[14] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).

the child.[15]  Both of these requirements must be established by clear and convincing evidence.[16]

(15)  On appeal, the Mother has filed a statement for the Court's consideration.  In essence, the Mother disputes that she has a history of domestic violence and argues that DSCYF did not meaningfully attempt to reunify her with the Child.  With regard to her claim that she does not have a history of domestic violence, the Family Court specifically found in its order following the dispositional hearing that the Mother's denial of a domestic-violence history lacked credibility.  In connection with its credibility finding, the court noted that the Mother's behavior in the courtroom increased its concern about the Mother's anger and aggressiveness.  We will not disturb a credibility determination made by the Family Court.  To the extent that the Mother argues that DSCYF did not meaningfully attempt to reunify her with the Child, her argument is belied by the record and the length of time that DSCYF continued to work on her case plan with her; that is, more than two years— well in excess of the one year that is required by statute.

(16)  Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts.  We

---

[15] *Shepherd*, 752 A.2d at 536-37.
[16] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

10

therefore conclude that the Mother's appeal is wholly without merit and devoid of any arguably appealable issue. And we are satisfied that the Mother's counsel made a conscientious effort to examine the record and the law and properly determined that the Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:


*/s/ Collins J. Seitz, Jr.*
Chief Justice